## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| PALISADE TECHNOLOGIES, LLP, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:25-cv-1170 |
| v. | § § | |
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD., | § § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § § § § | |

### PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Palisade Technologies, LLP ("Palisade" or "Plaintiff") files this Complaint against

Defendant Yangtze Memory Technologies Company, Ltd. (collectively "YMTC" or "Defendant")

and alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for patent infringement (hereinafter the "Action"), brought

under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, seeking damages and other

relief arising out of Defendant's infringement of United States Patent Nos. 7,697,329 ("'329

Patent"); 8,441,853 ("'853 Patent"); 8,996,838 ("'838 Patent"); 9,281,314 ("'314 patent"); and

9,524,974 ("'974 patent") (collectively, the "Asserted Patents"). Palisade owns the entire right,

title, and interest in and to each of the Asserted Patents.

2.      Palisade asserts that Defendant infringes each Asserted Patent by, without

Palisade's authorization, making, using, offering to sell, and selling in, and/or importing into the

United States certain semiconductor memory devices, including NAND flash memory devices.

## THE PARTIES

3.      Plaintiff Palisade is a corporation organized and existing under the laws of Nevada, with its principal place of business in Gardnerville, Nevada.

4.      On information and belief, Defendant Yangtze Memory Technologies Company, Ltd. ("YMTC") is a Chinese company that is headquartered in and maintains a principal place of business at No. 88 Weilai 3rd Road, East Lake High-tech Development Zone, Wuhan, Hubei, China.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). Defendant is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

7.      On information and belief, Defendant has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial District both proper and convenient for this action.

8.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial District, including: (A) performing at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents. Defendant has placed and continues to place infringing

products, such as 3D NAND flash memory, into the stream of commerce via an established distribution channel with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District. Further, such jurisdiction is consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, *inter alia*, (i) YMTC has done and continues to do business in Texas, and (ii) YMTC has committed and continues to commit, directly or through intermediaries (including subsidiaries, distributors, affiliates, retailers, suppliers, integrators, customers, and others), acts of patent infringement in this State. Such acts of infringement include making, using, offering to sell, and/or selling Accused Products (as more particularly identified and described throughout this Complaint, below) in this State and this District and/or importing Accused Products into this State and/or inducing others to commit acts of patent infringement in this State. Indeed, YMTC has purposefully and voluntarily placed, and is continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the expectation and intent that such products will be sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that such products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

9.      On October 6, 2025, YMTC filed suit for patent infringement against Micron Technology, Inc.; Micron Semiconductor Products, Inc.; Micron Technology Texas, LLC; and Avnet, Inc. (collectively "Micron") in this Court. *See Yangtze Memory Technologies Company, Ltd., v. Micron Technology, Inc.*, et al., 2:25-cv-01010, Dkt. No. 1 (E.D. Tex.). YMTC alleged that Micron sells infringing products in this District and that such acts "are causing and will

continue to cause at least YMTC irreparable harm, for which there is no adequate remedy at law." *See id.* at ¶¶ 116, 142, 168, 190, 216, 242, 265, 298. YMTC sought an injunction based on these acts. *See id.*; *see also id.* at Prayer for Relief (p. 84). YMTC's complaint against Micron alleges that Micron's importation and sales of infringing products in the United States is causing it irreparable harm. *See id.* at ¶¶ 91, 116, 119, 142, 145, 168, 171, 190, 193, 216, 219, 242, 245, 265, 268, 298. In short, YMTC alleges that Micron's activities in the United States are causing irreparable harm to its own activities in the United States.

10.     On information and belief, YMTC designs and manufactures NAND flash memory. YMTC's products range from 3D NAND flash memory wafers and packaged chips to embedded memory solutions and consumer and enterprise SSDs, which are widely used in mobile devices, consumer electronics, computers, servers, and data centers.

11.     On information and belief, YMTC is considered "the leader in 3D NAND flash." https://www.techinsights.com/disruptive-event/ymtc-232l-tlc-3d-nand. YMTC presents itself as having a "leadership role in the NAND market." *See Yangtze Memory Technologies Company, Ltd., v. Micron Technology, Inc.*, et al., 2:25-cv-01010, Dkt. No. 1 at ¶ 44 (E.D. Tex.).

12.     On information and belief, YMTC has a wholly-owned subsidiary, Yangtze Memory Technologies, Inc. ("YMTI"), which operates in the United States. YMTC alleges that YMTI manages YMTC's U.S. market entry, business development, and customer engagement activities. *See Yangtze Memory Technologies, Inc. v. Micron Technology Inc.*, No. 1:25-cv-01795, Dkt. 1 ¶ 22 (D.D.C.). YMTC conducts activities in the United States directly and through YMTI.

13.     On information and belief, YMTC controls and has controlled its subsidiaries, including YMTI, in this District and dictates every facet of YMTI's business such that YMTI

acts as YMTC's instrument in the United States. For instance, YMTC admits that it is "dedicated to the development of memory products for the global market" and "maintains ties to" the United States "through a wholly-owned subsidiary, Yangtze Memory Technologies, Inc." *See Yangtze Memory Technologies Ltd. v. Micron Technology Inc.*, No. 3:23-cv-05792, Dkt. 29 ¶ 24 (N.D. Cal.).

14.    On information and belief, YMTC places, has placed, and contributed to placing its products, including the accused products, into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold in the United States, including in this District. On information and belief, YMTC has also derived substantial revenue from selling its products in this District. YMTC sells and offers to sell its products to customers in the United States and in this District directly and/or through its subsidiaries, such as YMTI.

15.    YMTC declared to the United States Patent and Trademark Office ("USPTO") that it used its YMTC trademark on 3D NAND products in commerce regulated by the U.S. Congress—*i.e.*, products either sold within the U.S. or imported into the U.S. from China. As part of its trademark filing, YMTC declared under penalty of perjury that "the mark is in use in commerce on or in connection with all the goods/services in the application" and that "[t]he specimen(s) shows the mark as used on in connection with the goods … in commerce." *See* Ex. 1.

16.    YMTC also targets consumers in the United States and this District via its interactive website, which is accessible in the United States, where it provides product specifications in English for potential customers (https://www.ymtc.com/en/), Technical Support

(https://www.ymtc.com/en/techsupport.html), and Sales Support (https://www.ymtc.com/en/salessupport.html).

17.     YMTC has also repeatedly and purposely availed itself of the rights and benefits of the laws of the State of Texas and this judicial District. YMTC sued Micron in this District within the last two months.

18.     In sum, this Court has personal jurisdiction over YMTC at least because YMTC has purposely availed itself of the rights and benefits of the laws of the State of Texas and this judicial District; has done and is doing substantial business in the State of Texas and this judicial District; has sufficient minimum contacts and/or maintains continuous and systematic contacts in the State of Texas, this judicial District, and the United States; and uses, offers to sell, sells, imports, and/or distributes products through the United States, including within the State of Texas and the District.

## COUNT I
### (Infringement of U.S. Patent No. 7,697,329)

19.     Plaintiff incorporates the preceding paragraphs herein by reference.

20.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

21.     Palisade is the owner of all substantial  rights, title, and interest in and to the '329 patent including  the  right  to  exclude  others  and  to  enforce,  sue,  and  recover  damages  for  past infringements.

22.     The '329 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on April 13, 2010, after full and fair examination.

23.     Defendant directly and/or indirectly infringed (by inducing infringement) one or more claims of the '329 patent in this District and elsewhere in Texas and the United States by

making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products containing a zia contact region, such as 3D NAND, and/or products containing the same that incorporate the fundamental technologies covered by the '329 patent (the "'329 Accused Products"). An example of a product containing the '329 Accused Products is the KingSpec XG7000, which when torn down revealed 3D NAND memory manufactured by YMTC.



24.    Specifically, the package for the 3D NAND from this exemplary teardown included packaging with YMTC's markings for YMN0ATF1B1HPAD:



***Direct Infringement (35 U.S.C. § 271(a))***

25.    Defendant directly infringes one or more claims of the '329 patent in this District and elsewhere in Texas and the United States.

26.    Defendant directly infringed, either by itself or via its agent(s), at least Claim 1 of the '329 patent[1] as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '329 Accused Products. Furthermore, Defendant made and sold the '329 Accused Products outside of the United States and either delivered those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivered the '329 Accused Products outside of the United States, it did so intending and/or knowing that those products were destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '329 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

27.    By way of illustration only, the '329 Accused Products are each a memory comprising all of the limitations of claim 1 of the '329 patent. For example, each of the '329 Accused Products include a substrate as shown in the die photograph below and include a data array, such as for example the area indicated with a red box:

---

[1] Throughout this Complaint, wherever Palisade identifies specific claims of the Asserted Patents infringed by Defendant, Palisade expressly reserves the right to identify additional claims and products in its infringement contentions in accordance with applicable local rules and the Court's case management orders. Specifically identified claims throughout this Complaint are provided for notice pleading only.

28.    The '329 Accused Products further comprise a configuration array associated with, but separate from, the data array and adapted to store configuration information for configuring the data array. For example, YMTC's data sheets for their TLC 3D NAND Flash provide for configuration information such as the parameters included in Table 74 partially excerpted below.

**Table 74. Parameter Page Data (TBD)**

All TBD items are 00h or other data temporarily. They will be updated in later version.

| Byte | Value | Description |
|------|-------|-------------|
| Revision information and features block | | |
| 0-3 | 4Fh<br>4Eh<br>46h<br>49h | Parameter page signature<br>Byte 0: 4Fh. "O"<br>Byte 1: 4Eh. "N"<br>Byte 2: 46h. "F"<br>Byte 3: 49h. "I" |
| 4-5 | FEh<br>03h | Revision number<br>10-15 Reserved (0)<br>9 1 = supports ONFI version 4.0<br>8 1 = supports ONFI version 3.2<br>7 1 = supports ONFI version 3.1<br>6 1 = supports ONFI version 3.0<br>5 1 = supports ONFI version 2.3<br>4 1 = supports ONFI version 2.2<br>3 1 = supports ONFI version 2.1<br>2 1 = supports ONFI version 2.0<br>1 1 = supports ONFI version 1.0<br>0 Reserved (0) |
| 6-7 | DAh<br>FDh | Features supported<br>15 1 = supports package electrical specification<br>14 1 = supports ZQ calibration<br>13 1 = supports NV-DDR3<br>12 1 = supports external VPP<br>11 1 = supports volume addressing<br>10 1 = supports NV-DDR2 |

| | | |
|---|---|---|
| Gen2_256Gb_TLC_Datasheet_Client_rev0.2 | 121 | ©Yangtze Memory Technologies Co., Ltd. |

(Gen2 256Gb TLC 3D NAND Flash Client Datasheet (Package) Rev 0.2 at 121-28).

29.    On information and belief, in the '329 Accused Products configuration information, such as the parameters included in Table 74, are stored in a configuration array that is associated with the data array but separate from the data array and adapted to store this information. This is evidenced by the descriptions in Defendant's own patents, including U.S. Patent Nos. 10,803,974 ("YMTC '974 patent") and 11,456,047 ("'047 patent").

30.    For example, Defendant's YMTC '974 patent provides in Figure 1 a block diagram of a memory device that includes "bad column table," an example of configuration information which may be contained in header or spare portions of the memory array 10. *See* YMTC '974 patent, 3:15-28; *see also* Gen2 256Gb TLC 3D NAND Flash Client Datasheet

(Package) Rev 0.2 at 121-28. Defendant's '047 patent similarly provides that "configuration information is stored in the non-volatile memory cells in the memory cell array," which is further shown as part of an initialization partition in Figure 1. '047 patent, 13:34-41 (discussing Fig 4); Fig. 1.



FIG. 1

(YMTC '974 patent, Fig. 1 (annotated)).



('047 patent, Fig. 1 (annotated))



('047 patent, Fig. 4 (annotated))

31.     In each of the '329 Accused Products, the configuration array and the data array are disposed on the substrate in a same orientation as each other relative to the substrate. For example, as shown in the die photograph below there is only a single memory cell orientation on the YMTC product, regardless of function, and thus both configuration array and data array are disposed in the same orientation relative to the substrate.



32.     In each of the '329 Accused Products, the configuration array includes a plurality of zia contact regions that are disposed in substantially similar relative locations in the configuration array as a plurality of zia contact regions disposed in the data array. For example, as shown in the SEM image below the '329 Accused Products include zia structures. The SEM image below shows the zia structures from a single plane and location, but because the cell orientation is consistent throughout the device, the zia region is the same for both the configuration array and the data array.



***Indirect Infringement (35 U.S.C. § 271(b))***

33.    In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed one or more claims of the '329 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '329 Accused Products.

34.    Defendant has had knowledge of the '329 patent since the service of the original Complaint in this action. Since receiving notice of its infringements, Defendant actively induced the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). For example, on information and belief, Defendant induced subsidiaries such as YMTI to import the '329 Accused Products into the United States. Such inducements have been committed with the knowledge that the acts induced constitute infringement of the '329 patent. On information and belief, Defendant intended to cause and took affirmative steps to induce infringement by, among

other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '329 Accused Products; creating and/or maintaining established distribution channels for the '329 Accused Products into and within the United States; manufacturing the '329 Accused Products in conformity with U.S. laws and regulations; distributing or making available datasheets supporting use of the '329 Accused Products that promote their features, specifications, and applications; providing technical documentation and tools for the '329 Accused Products, such as white papers, brochures, and/or manuals; promoting the incorporation of the '329 Accused Products into end-user products, testing and certifying features related to the '329 Accused Products; and/or by providing technical support and/or related services for these products to purchasers in the United States.

***Damages***

35.    On information and belief, despite having knowledge of the '329 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '329 patent since the above detailed knowledge, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '329 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Palisade is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

36.    Palisade has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Palisade in an amount that adequately compensates Palisade for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (Infringement of U.S. Patent No. 8,441,853)

37.    Plaintiff incorporates the preceding paragraphs herein by reference.

38.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, et seq.

39.    Palisade is the owner of all substantial rights, title, and interest in and to the '853 patent including the right to exclude others and to enforce, sue, and recover damages for past infringements.

40.    The '853 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on May 14, 2013, after full and fair examination.

41.    Defendant directly and/or indirectly infringed (by inducing infringement) one or more claims of the '853 patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing 3D NAND, and/or products containing the same that incorporate the fundamental technologies covered by the '853 patent (the "'853 Accused Products"). An example of a product containing the '853 Accused Products is the KingSpec XG7000, which when torn down revealed 3D NAND memory manufactured by YMTC.



42.     Specifically, the package for the 3D NAND from this exemplary teardown included packaging with YMTC's markings for YMN0ATF1B1HPAD:



***Direct Infringement (35 U.S.C. § 271(a))***

43.     Defendant directly infringes one or more claims of the '853 patent in this District and elsewhere in Texas and the United States.

44.     Defendant directly infringed, either by itself or via its agent(s), at least Claim 1 of the '853 patent as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '853 Accused Products, including by testing the '853 Accused Products in

configurations as in the exemplary implementations discussed further below. Furthermore, Defendant made and sold the '853 Accused Products outside of the United States and either delivered those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivered the '853 Accused Products outside of the United States, it did so intending and/or knowing that those products were destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '853 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

45.     By way of illustration only, the '853 Accused Products perform a method comprising each and every step of claim 1 of the '853 patent. On information and belief, the '853 Accused Products perform a "method for sensing a selected non-volatile storage element in a NAND string which comprises non-volatile storage elements connected in series, and which has a source side and a drain side." The '853 Accused Products comprise 3D NAND memory that contains a NAND string which comprises non-volatile storage elements connected in series, and which has a source side and a drain side. For example, the annotated image below of a representative '853 Accused Product demonstrates this:



46.    On information and belief, the '853 Accused Products "assign each non-volatile storage element of the NAND string to a group among multiple groups in the NAND string." As illustrated below, the storage elements are assigned to either the source side deck or the drain side deck.



47.    On information and belief, the '853 Accused Products are configured such that "the multiple groups have different sizes" such that "a group of the multiple groups which is closest to the source side has more non-volatile storage elements of the NAND string than any other group of the multiple groups." As illustrated below, the source side deck is closest to the source (the common source plate) and contains more non-volatile storage elements than the drain side deck.



48.    On information and belief, the '853 Accused Products are configured such that "the selected non-volatile storage element is assigned to one group of the multiple groups" and "the NAND string is connected at the drain side to a bit line, the bit line is connected to sensing circuitry." The '853 Accused Products implement a vertical process variation through which the selected non-volatile storage element is assigned to a group. As illustrated by the mustard arrow below, the NAND string is connected at the drain side to a bit line, which in turn is connected to sensing circuitry:



49.     On information and belief, the '853 Accused Products are configured such that "sensing whether a threshold voltage of the selected non-volatile storage element is above a control gate voltage using the sensing circuitry, the sensing is adjusted based on a position of the one group in the NAND string." This is evidenced by both the orientation of the source and drain side decks shown below and the process described in U.S. Patent No. 11,887,671 ("the '671 patent"), which is assigned to Defendant. The process described in Defendant's '671 patent indicates that Defendant uses a process to set the maximum pass voltage based on the variation of the structure noting that "different maximum pass voltages Vpass_max can be implemented for different maximum word lines on the basis of a vulnerability of corresponding memory cells to the pass disturb." '671 patent, 25:32-35. This is necessary because the "memory cells at the bottom" of the memory stack in the '853 Accused Products "can experience larger shift" in the change in the threshold voltage:

*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

50.     In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed one or more claims of the '853 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '853 Accused Products.

51.     Defendant has had knowledge of the '853 patent since the service of the original Complaint in this action. Since receiving notice of its infringements, Defendant actively induced the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). For example, on information and belief, Defendant induced subsidiaries such as YMTI to import the '853 Accused Products into the United States. Such inducements have been committed with the knowledge that the acts induced constitute infringement of the '853 patent. On information and

belief, Defendant intended to cause and took affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '853 Accused Products; creating and/or maintaining established distribution channels for the '853 Accused Products into and within the United States; manufacturing the '853 Accused Products in conformity with U.S. laws and regulations; distributing or making available datasheets supporting use of the '853 Accused Products that promote their features, specifications, and applications; providing technical documentation and tools for the '853 Accused Products, such as white papers, brochures, and/or manuals; promoting the incorporation of the '853 Accused Products into end-user products, testing and certifying features related to the '853 Accused Products; and/or by providing technical support and/or related services for these products to purchasers in the United States.

***Damages***

52.     On information and belief, despite having knowledge of the '853 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '853 patent since the above detailed knowledge, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '853 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Palisade is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

53.     Palisade has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Palisade in an amount that adequately

compensates Palisade for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (Infringement of U.S. Patent No. 8,996,838)

54. Plaintiff incorporates the preceding paragraphs herein by reference.

55. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

56. Palisade is the owner of all substantial rights, title, and interest in and to the '838 patent including the right to exclude others and to enforce, sue, and recover damages for past infringements.

57. The '838 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on March 31, 2015, after full and fair examination.

58. Defendant directly and/or indirectly infringed (by inducing infringement) one or more claims of the '838 patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products containing NAND, such as packages laser marked as YM, and/or products containing the same, such as the NAND memory contained in the KingSpec XG7000 (the "'838 Accused Products")



59.     Specifically, the package for the 3D NAND from this exemplary teardown included packaging with YMTC's markings for YMN0ATF1B1HPAD:



***Direct Infringement (35 U.S.C. § 271(a))***

60.     Defendant directly infringed one or more claims of the '838 patent in this District and elsewhere in Texas and the United States.

61.     Defendant directly infringed, either by itself or via its agent(s), at least Claim 1 of the '838 patent as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '838 Accused Products, including by testing the '838 Accused Products in

configurations as in the exemplary implementations discussed further below. Furthermore, Defendant made and sold the '838 Accused Products outside of the United States and either delivered those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivered the '838 Accused Products outside of the United States, it did so intending and/or knowing that those products were destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '838 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

62. By way of illustration only, the '838 Accused Products perform a method comprising each and every step of claim 1 of the '838 patent. On information and belief, the '838 Accused Products performed the claimed steps in a data storage device that includes a memory having a three-dimensional (3D) memory configuration and including a structure extending through multiple layers of the memory. The '838 Accused Products comprise a 3D memory configuration that includes a structure extending through multiple layers of the memory. For example, the annotated image below of a representative '838 Accused Product demonstrates this:

63.    On information and belief, the '838 Accused Products store information at the data storage device, the information identifying a location associated with a variation of the structure. For example, the '838 Accused Products store information identifying a location associated with a variation of the structure. As described in a paper titled "Recent Progress on 3D NAND Flash Technologies," "[i]n the latest achievement, 176-layer stacked 3D NAND has been demonstrated in both publication and mass production." [2]

---

[2] Ex. A – Akira Goda, *Recent Progress on 3D NAND Flash Technologies*, at 5 (*available at* https://www.mdpi.com/2079-9292/10/24/3156).

**Figure 9.** XYZ scaling of 3D NAND. (a) Layer stacking in Z-direction. (b) Footprint shrink of XY dimensions and layer pitch reduction as Z-shrink. Z-shrink is often combined with Z-stack to minimize the increase in the pillar height.

As the article notes, "[w]ith the WL [word line] pitch scaling, the trapped charge migration between the neighboring cells would raise the reliability concern."[3] And, "large write parallelism (= page size × number of planes) and short tProg are critical to achieve high write bandwidth."[4] "The improvements in tProg are realized by combinations of WL and BL bias time reduction, *fine tuning of the programming voltage compensating cell characteristics' variability across the pillar* and the reduction in the program verify operations." [5] The process described in the article is consistent with the process described in the '671 patent. The process described in Defendant's '671 patent indicates that Defendant uses a process to set the maximum pass voltage based on the variation of the structure noting that "different maximum pass voltages Vpass_max can be implemented for different maximum word lines on the basis of a vulnerability of corresponding memory cells to the pass disturb." '671 patent, 25:32-35.

---

[3] *Id*. at 7.
[4] *Id*. at 9.
[5] *Id*. (emphasis added).

64.    On information and belief, the '838 Accused Products access the information. For example, the '838 Accused Products access the information (i.e., the information identifying a location associated with a variation of the structure) in order to determine the finely tuned programming voltage noted above.

***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

65.    In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed one or more claims of the '838 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '838 Accused Products.

66.    Defendant has had knowledge of the '838 patent since the service of the original Complaint in this action. Since receiving notice of its infringements, Defendant actively induced the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). For example, on information and belief, Defendant induced subsidiaries such as YMTI to import the '838 Accused Products into the United States. Such inducements have been committed with the knowledge that the acts induced constitute infringement of the '838 patent. On information and belief, Defendant intended to cause and took affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '838 Accused Products; creating and/or maintaining established distribution channels for the '838 Accused Products into and within the United States; manufacturing the '838 Accused Products in conformity with U.S. laws and regulations; distributing or making available datasheets supporting use of the '838 Accused Products that

promote their features, specifications, and applications; providing technical documentation and tools for the '838 Accused Products, such as white papers, brochures, and/or manuals; promoting the incorporation of the '838 Accused Products into end-user products, testing and certifying features related to the '838 Accused Products; and/or by providing technical support and/or related services for these products to purchasers in the United States.

***Damages***

67.     On information and belief, despite having knowledge of the '838 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '838 patent since the above detailed knowledge, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '838 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Palisade is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

68.     Palisade has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Palisade in an amount that adequately compensates Palisade for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<u>**COUNT IV**</u>
**(Infringement of U.S. Patent No. 9,281,314)**

69.     Plaintiff incorporates the preceding paragraphs herein by reference.

70.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

71.     Palisade is the owner of all substantial rights, title, and interest in and to the '314 patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

72.     The '314 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on March 8, 2016, after full and fair examination.

73.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '314 patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products containing NAND, such as packages laser marked as YM, and/or products containing the same, such as the NAND memory contained in the KingSpec XG7000 (the "'314 Accused Products").



74.     Specifically, the package for the 3D NAND from this exemplary teardown included packaging with YMTC's markings for YMN0ATF1B1HPAD:

***Direct Infringement (35 U.S.C. § 271(a) and (g))***

75.    Defendant has directly infringed and continues to directly infringe one or more claims of the '314 patent in this District and elsewhere in Texas and the United States.

76.    Defendant has directly infringed and continues to directly infringe, either by itself or via its agent(s), at least Claim 13 of the '314 patent as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '314 Accused Products, including by testing the '314 Accused Products in configurations as in the exemplary implementation discussed further below. Further, Defendant has infringed certain claims of the '314 patent under 35 U.S.C. § 271(g) by among other things, making, selling, offering for sale, and/or importing products the '314 Accused Products that were made in a manner that satisfied the limitations of claim 13. Furthermore, Defendant makes and sells the '314 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivers the '314 Accused Products outside of the United States, it does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '314 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

77.    By way of illustration only, on information and belief, the '314 Accused Products are made using a method of manufacturing that infringes claim 13 of the '314 patent. For

example, the method of manufacturing of the '314 Accused Products comprises "forming a plurality of lines of memory cells." This is illustrated by the red boxes in the below cross section of a '314 Accused Product:



Further, the memory cells comprise "a charge storage region having sidewalls" and "a control gate." For example, a top down view of the '314 Accused Products shows a charge storage region having sidewalls and a control gate that consists of 1.5-2 nm TiN:



TEM Planar-section of the 3D NAND Flash Memory Array

78.     On information and belief, the method of manufacturing of the '314 Accused Products comprises "forming a plurality of word lines each having sidewalls, each of the word lines being associated with a line of the memory cells, each of the word lines being coupled to the control gates of the memory cells with which it is associated." This is illustrated by the top down view of a '314 Accused Product showing the word lines are coupled to the control gate:



TEM Planar-section of the 3D NAND Flash Memory Array

And the below cross section of a '314 Accused Product showing tungsten word lines that have

side walls and are each coupled to the control gates of the memory cells:



TEM Cross-section of the 3D NAND Flash Memory Array

79.    On information and belief, the method of manufacturing of the '314 Accused Products comprises "forming first oxide regions that cover the sidewalls of the charge storage regions." For example, in the below cross section, the sidewalls of the charge storage regions are covered by a silicon oxide layer:



80.     On information and belief, the method of manufacturing of the '314 Accused

Products comprises "forming second oxide regions that cover the sidewalls of the word lines"

and "forming nitride regions that cover the second oxide regions." For example, the below cross

section of a '314 Accused Product shows a second oxide region of aluminum oxide or silicon

oxide that covers the sidewalls of the word lines and the second oxide region is covered in 1.5-

2nm TiN:



81.     On information and belief, the method of manufacturing of the '314 Accused Products comprises "forming electrical isolation regions other than silicon nitride adjacent to the first oxide regions that cover the sidewalls of the charge storage regions." For example, the below cross section of a '314 Accused Product shows a separate polysilicon region and a separate aluminum oxide region that are adjacent to the first oxide region and cover the charge storage region.



***Indirect Infringement (Inducement – 35 U.S.C. § 271(b))***

82.     In addition and/or in the alternative to its direct infringements, Defendant has indirectly infringed one or more claims of the '314 patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '314 Accused Products.

83.     Defendant has had knowledge of the '314 patent since the service of the original Complaint in this action. Since receiving notice of its infringements, Defendant actively induced the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). For example, on information and belief, Defendant induces subsidiaries such as YTMI to import the '314 Accused Products into the United States. Such inducements have been committed with the

knowledge that the acts induced constitute infringement of the '314 patent. On information and belief, Defendant intended to cause and took affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '314 Accused Products; creating and/or maintaining established distribution channels for the '314 Accused Products into and within the United States; manufacturing the '314 Accused Products in conformity with U.S. laws and regulations; distributing or making available datasheets supporting use of the '314 Accused Products that promote their features, specifications, and applications; providing technical documentation and tools for the '314 Accused Products, such as white papers, brochures, and/or manuals; promoting the incorporation of the '314 Accused Products into end-user products, testing and certifying features related to the '314 Accused Products; and/or by providing technical support and/or related services for these products to purchasers in the United States.

***Damages***

84.    On information and belief, despite having knowledge of the '314 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '314 patent since the above detailed knowledge, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '314 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Palisade is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

85.    Palisade has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Palisade in an amount that adequately

compensates Palisade for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V
### (Infringement of U.S. Patent No. 9,524,974)

86.     Plaintiff incorporates the preceding paragraphs herein by reference.

87.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, et seq.

88.     Palisade is the owner of all substantial rights, title, and interest in and to the '974 patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

89.     The '974 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on December 20, 2016, after full and fair examination.

90.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '974 patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import products containing NAND, such as packages laser marked as YM, and/or products containing the same, such as the NAND memory contained in the KingSpec XG7000 (the "'974 Accused Products")



91.     Specifically, the package for the 3D NAND from this exemplary teardown included packaging with YMTC's markings for YMN0ATF1B1HPAD:



***Direct Infringement (35 U.S.C. § 271(a) and (g))***

92.     Defendant has directly infringed and continues to directly infringe one or more claims of the '974 patent in this District and elsewhere in Texas and the United States.

93.     Defendant has directly infringed and continues to directly infringe, either by itself or via its agent(s), at least Claim 17 of the '974 patent as set forth under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the '974 Accused Products, including

by testing the '974 Accused Products in configurations as in the exemplary implementation discussed further below. Further, Defendant has infringed certain claims of the '974 patent under 35 U.S.C. § 271(g) by among other things, making, selling, offering for sale, and/or importing products the '974 Accused Products that were made in a manner that satisfied the limitations of claim 17. Furthermore, Defendant makes and sells the '974 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivers the '974 Accused Products outside of the United States, it does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '974 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

94.     By way of illustration only, the '974 Accused Products are made using a method of manufacturing that infringes claim 17 of the '974 patent. For example, the method of manufacturing of the '974 Accused Products comprises "forming a plurality of NAND strings disposed on a surface of a substrate." This is illustrated by the pink boxes in the below cross section of a '974 Accused Product produced through SEM imaging:



95.    On information and belief, the method of manufacturing of the '974 Accused Products comprises "depositing a dielectric layer over the plurality of NAND strings." This is illustrated by the blue box in the below cross section of a '974 Accused Product produced through SEM imaging.



96.    On information and belief, the method of manufacturing of the '974 Accused Products comprises "forming a plurality of mandrels on the dielectric layer." This is evidenced by the pitch spacing in the below cross section of a '974 Accused Product produced through TEM and SEM imaging. The cross-sectioned '974 Accused Product has a pitch of ~40nm which has led analysts to conclude that YMTC uses "a double patterning technology (DPT) likely with self-aligned double patterning (SADP)." *See* https://www.techinsights.com/blog/ymtc-chinas-first-mass-producer-3d-nand-flash-memory-chips; *see also* https://www.semiconductor-digest.com/unlocking-the-secrets-of-the-ymtc-64-layer-3d-xtacking-nand-flash/ (stating that

"self-aligned double patterning (SADP) is likely used" where the bitline pitch is 40nm). The use of SADP relies on mandrels because mandrels are the "parent" structures that create the spacers which become the actual fine-pitch pattern.



97.     On information and belief, the method of manufacturing of the '974 Accused Products comprises "forming a liner layer along side surfaces of the plurality of mandrels," "forming sidewall spacers on the liner layer along side surfaces of the plurality of mandrels," and "removing the plurality of mandrels to leave a pattern of sidewall spacers with portions of liner layer material." As part of its SADP process, YMTC uses a liner layer that coats the side surfaces of the plurality of mandrels. The liner layer protects the mandrel during spacer etchback. Thereafter, a thicker conformal layer of spacer material is deposited on the liner layer. The spacer material is deposited on the liner layer to ensure clean mandrel removal and provide an

etch stop during the spacer etch. As detailed above, the use of SADP in manufacturing the '974 Accused Product necessitates the use of mandrels. The removal of such mandrels is evidenced by the fact the mandrels do not appear in the cross section of a '974 Accused Product produced through TEM and SEM imaging. After the removal of mandrels, a pattern of sidewall spacers with portions of liner layer material remains, this is evidenced by the cat ear like structures atop the bitlines, which the TEM and SEM imaging confirms are a distinct structure from the sidewalls of the bitlines.



Sidewall spacer pattern w/ liner material

**Portions of liner material**



98.     On information and belief, the method of manufacturing of the '974 Accused Products comprises "subsequently etching a plurality of first trenches in the dielectric layer, an individual first trench formed at a location between sidewall spacers that were formed on a common mandrel." This is evidenced by the first trenches annotated in pink in the below cross section of a '974 Accused Product produced through TEM imaging.




99.    On information and belief, the method of manufacturing of the '974 Accused Products comprises "etching a plurality of second trenches in the dielectric layer, an individual second trench formed at a location between sidewall spacers that were formed on neighboring mandrels." This is evidenced by the second trenches annotated in blue in the below cross section of a '974 Accused Product produced through TEM imaging.





100.    On information and belief, the method of manufacturing of the '974 Accused Products comprises "depositing copper in the plurality of first trenches to form a plurality of bit lines located in the first trenches." This is evidenced by the material within the TEM imaging annotated as copper in the below cross section of a '974 Accused Product produced through TEM imaging.



*Indirect Infringement (Inducement – 35 U.S.C. § 271(b))*

101.    In addition and/or in the alternative to its direct infringements, Defendant has

indirectly infringed one or more claims of the '974 patent by knowingly and intentionally

inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators,

importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '974 Accused Products.

102.    Defendant has had knowledge of the '974 patent since the service of the original Complaint in this action. Since receiving notice of its infringements, Defendant actively induced the direct infringements of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). For example, on information and belief, Defendant induced subsidiaries such as YMTI to import the '974 Accused Products into the United States. Such inducements have been committed with the knowledge that the acts induced constitute infringement of the '974 patent. On information and belief, Defendant intended to cause and took affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '974 Accused Products; creating and/or maintaining established distribution channels for the '974 Accused Products into and within the United States; manufacturing the '974 Accused Products in conformity with U.S. laws and regulations; distributing or making available datasheets supporting use of the '974 Accused Products that promote their features, specifications, and applications; providing technical documentation and tools for the '974 Accused Products, such as white papers, brochures, and/or manuals; promoting the incorporation of the '974 Accused Products into end-user products, testing and certifying features related to the '974 Accused Products; and/or by providing technical support and/or related services for these products to purchasers in the United States.

### *Damages*

103.    On information and belief, despite having knowledge of the '974 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '974 patent

since the above detailed knowledge, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '974 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Palisade is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed.

104.    Palisade has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Palisade in an amount that adequately compensates Palisade for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

105.    Palisade is entitled to recover from Defendant the damages sustained by Palisade as a result of Defendant's wrongful acts, and willful infringements, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

106.    Palisade has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Palisade is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

107.    Palisade hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

108.    Palisade respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Palisade the following relief:

(i)     A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii)    A judgment that one or more claims of the Asserted Patents have been willfully infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(iii)   A judgment that Defendant account for and pay to Plaintiff all damages and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)    A judgment that Defendant account for and pay to Plaintiff a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(v)     A judgment that Plaintiff be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(vi)    A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)   Such other and further relief as the Court deems just and equitable.

Dated: November 26, 2025

Respectfully submitted,

*/s/Patrick J. Conroy*
**Patrick J. Conroy**
Texas Bar No. 24012448
**T. William Kennedy Jr.**
Texas Bar No. 24055771
**Ryan P. Griffin**
Texas Bar No. 24053687
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**David T. DeZern**
Texas Bar No. 24059677
**Nelson Bumgardner Conroy PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
Tel: (214) 446-4950
pat@nelbum.com
bill@nelbum.com
ryan@nelbum.com
jon@nelbum.com
david@nelbum.com

**Attorneys for Plaintiff**
**Palisade Technologies, LLP**